UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CHARLES TIPTON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) No.: | 3:15-CV-311-TAV-CCS |
| CSX TRANSPORTATION, INC., and UNION TANK CAR COMPANY, | ) | *Lead case, consolidated with*: |
| Defendants. | ) | |
| DEDRA JONES, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) No.: | 3:15-CV-337-TAV-CCS |
| CSX TRANSPORTATION, INC., and UNION TANK CAR COMPANY, | ) | *as consolidated with*: |
| Defendants. | ) | |
| KELLI JOHNSON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) No.: | 3:15-CV-497-TAV-CCS |
| CSX TRANSPORTATION, INC., and UNION TANK CAR COMPANY, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on plaintiffs' Motion to Stay Litigation Pending Appeal Pursuant to Rule 23(f), or, in the Alternative, for a Continuance of Trial Date, in the above-styled consolidated cases [No. 3:15-cv-311, Doc. 227]. Defendants Union Tank Car Company ("UTC") and CSX Transportation, Inc. ("CSX") responded in opposition to

plaintiffs' motion [Docs. 231, 233]. The Court has carefully considered the matter and, for the reasons stated below, will grant in part and deny in part plaintiffs' motion.[1]

I. Background

This case concerns a train derailment and resulting chemical fire in Maryville, Tennessee, which caused the mandatory evacuation of thousands of local residents [Doc. 114 ¶¶ 14, 30–31]. A number of those residents have brought suit against the operator of the train, defendant CSX, and the owner of the tank car that derailed and caught fire, defendant UTC, asserting state-law tort claims [*Id.* ¶¶ 5–12]. The Court has previously summarized the factual allegations in this matter in detail [*see, e.g.*, Doc. 118], and will instead focus here on the relevant procedural history.

On July 22, 2015, plaintiffs Charles Tipton, Billy Tipton, Travis Pruett, and Elizabeth Pruett filed suit against defendants CSX and UTC, purporting to represent themselves and others similarly situated in a class action lawsuit [Doc. 1]. Plaintiffs asserted claims of negligence and private nuisance under Tennessee common law against both defendants [*Id.* ¶¶ 37–53]. Various other plaintiffs filed separate lawsuits arising from the same train derailment.[2] On May 18, 2016, the Court granted the unopposed motion of

---

[1] On October 10, 2017, plaintiffs moved the Court to shorten the time for CSX to respond to plaintiffs' motion to stay or continue these proceedings from October 17 to October 11, 2017 [Doc. 232]. However, CSX filed its response later that same day, i.e., October 10. The Court will thus deny plaintiffs' motion [Doc. 232] as moot.

[2] These are: *Jones v. CSX Transp., Inc.*, No. 3:15-cv-337; *Hall v. CSX Transp., Inc.*, No. 3:15-cv-346; *Johnson, v. CSX Transp., Inc.*, No. 3:15-cv-497; *Andies v. CSX Transp., Inc.*, No. 3:16-cv-474; *Toledo v. CSX Transp., Inc.*, No. 3:16-cv-475; *Boling v. CSX Transp., Inc.*, No. 3:16-cv-488; *Payne v. CSX Transp., Inc.*, No. 3:16-cv-489; *Beals v. CSX Transp., Inc.*, No. 3:16-cv-497; *Jaggers v. CSX Transp., Inc.*, No. 3:16-cv-498; *Owens v. CSX Transp., Inc.*, No. 3:16-cv-499.

the plaintiffs in *Tipton v. CSX Transportation, Inc.*, No. 3:15-cv-311, *Jones v. CSX Transportation, Inc.*, No. 3:15-cv-337, and *Johnson v. CSX Transportation, Inc.*, No. 3:15-cv-497, to consolidate their respective actions [Doc. 110]. The Court designated *Tipton* as the lead case, and on June 10, 2016, plaintiffs filed a Master Consolidated Class Action Complaint, which superseded all prior complaints in the consolidated cases [Doc. 114]. The proposed class was defined as follows:

> All natural persons, whether minor or adult, including any person claiming by, through or under a Class Member, who had a possessory interest in real property and who were physically present in the Evacuation Zone during and after the early hours of July 2, 2015, and who evacuated; and all natural persons, including minors and adults, who were physically present in the Evacuation Zone, who had a possessory interest in real property in the Evacuation Zone, but who were sheltered in place during or after the early morning hours of July 2, 2015. Excluded from the Class are those persons who would otherwise be Class members, but who or which are: (i) Defendants, or any of their employees, agents, insurers, contractors, and subcontractors, including employees of Defendant's agents, contractors or subcontractors, (ii) the Court, court personnel and their immediate families, (iii) the attorneys for any of the Parties and members of their law firms; (iv) making a claim for personal injury for which they sought medical treatment; and (v) Opt Outs.

[*Id.* ¶ 38]. Then, on June 7, 2016, the Court entered an order granting in part and denying in part the motions to dismiss filed by defendants in both the consolidated cases and *Hall v. CSX Transportation, Inc.*, No. 3:15-cv-346 [Doc. 118]. The Court rejected application of the Tennessee firefighter's rule and economic loss doctrine, held that plaintiffs properly stated claims for negligence and nuisance, and found that only some of plaintiffs' allegations were preempted by federal law [*Id.*].

3

On October 14, 2016, plaintiffs moved to certify this matter as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(3), and, alternatively, 23(c)(4) [Doc. 131]. The Court referred this motion to Magistrate Judge C. Clifford Shirley, Jr., for his consideration [Doc. 133]. On July 11, 2017, Magistrate Judge Shirley entered a Report and Recommendation (the "R&R"), recommending class certification as to the liability issues in the case but not as to the nature of plaintiffs' injuries or the extent of damages [Doc. 173]. Defendants filed several joint objections to the R&R [Doc. 180], to which plaintiffs responded [Doc. 196]. Then, on September 26, 2017, the Court entered an order sustaining defendants' objections to the R&R and denying class certification [Doc. 220]. Specifically, the Court held that plaintiffs had failed to satisfy the impracticability of joinder requirement under Rule 23(a)(1) [*Id.* at 16].

On October 3, 2017, plaintiffs filed a motion to stay these proceedings pending resolution of their forthcoming petition for permission to appeal the Court's September 26 order to the United States Court of Appeals for the Sixth Circuit [Doc. 227]. Plaintiffs alternatively request a continuance of the trial date, currently scheduled for November 13, 2017 [Doc. 148], to permit sufficient time to prepare for trial, dispose of pending motions, and resolve other pretrial issues [Doc. 227 pp. 1–2]. Defendant UTC filed a response opposing any stay of this matter but suggesting that a short continuance of the trial date would be appropriate [Doc. 231]. Defendant CSX then filed a response opposing either a stay or continuance [Doc. 233]. On October 10, 2017, the Court received notice that plaintiffs had filed their petition for permission to appeal [Doc. 234].

Defendants UTC and CSX have also filed separate motions for summary judgment, which are now fully briefed [Docs. 175–78, 206–07]. In addition, plaintiffs have moved for leave to file an amended consolidated complaint [Doc. 167], which defendants oppose [Docs. 168–69]. These motions remain pending before the Court at this time.

## II. Analysis

The Court will first determine whether plaintiffs are entitled to a stay of litigation pending the Sixth Circuit's disposition of their petition for permission to file an interlocutory appeal. The Court will then turn to the question whether a continuance of the trial date in this matter is alternatively warranted. For the reasons explained below, the Court finds that plaintiffs are not entitled to their requested stay, but that a brief continuance is nonetheless appropriate in the interest of judicial economy.

### A. Plaintiffs' Motion to Stay Litigation

First, plaintiffs seek a stay of litigation while the Sixth Circuit considers their petition for permission to appeal under Federal Rule of Civil Procedure 23(f) [Doc. 227 pp. 3–6]. That rule provides as follows:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f). Although the Sixth Circuit has not yet adopted a clear standard for applying Rule 23(f), courts typically follow "the traditional analysis for determining preliminary injunctions or stays pending appeal." *Beattie v. CenturyTel, Inc.*, No. 02-

10277-BC, 2006 WL 1722207, at *3 (E.D. Mich. June 20, 2006); *see also Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) ("The factors to be considered in determining whether an order should be stayed are the same factors considered in determining whether to issue a . . . preliminary injunction."). These factors ask whether: (1) there is a strong likelihood of success on the merits; (2) the movant would otherwise suffer irreparable injury; (3) a stay would cause substantial harm to others; and (4) a stay would serve the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *see also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (noting the factors "are not prerequisites that must be met, but are interrelated considerations"). The movant bears the burden of proving that the balance of these factors supports a stay. *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-2196, 2014 WL 12591692, at *1 (N.D. Ohio May 16, 2014).

The Court will now analyze each of the above four factors in turn.

### 1. Likelihood of Success on the Merits

First, plaintiffs' "burden with respect to showing a likelihood of success on the merits is two-fold: [plaintiffs] must show [1] a likelihood that the Rule 23(f) petition will be granted, and [2] that the Sixth Circuit will reverse . . . this Court's class certification decision[]." *Id.* As for the first prong, in ruling on a Rule 23(f) petition, the Sixth Circuit "eschew[s] any hard-and-fast test in favor of a broad discretion to evaluate relevant factors." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002). Relevant factors include: (1) the petitioner's likelihood of success on appeal "under the deferential abuse-of-

discretion standard"; (2) whether denial of class certification would as a practical matter sound the death knell of the case, given the costs of continued litigation; (3) whether the case offers "a novel or unsettled question of law"; and (4) the procedural posture below, including whether the district court is likely to reexamine the certification question. *In re VHS of Mich., Inc.*, 601 F. App'x 342, 343 (6th Cir. 2015). But "interlocutory appeals are not routinely accepted," *In re HCA Holdings, Inc.*, No. 14–0511, 2015 WL 10575861, at *1 (6th Cir. Feb. 26, 2015), and a "decision which 'turns on case-specific matters of fact and district court discretion,' . . . as most certification decisions indisputably do[, ]generally will not be appropriate for interlocutory review," *Delta Air Lines*, 310 F.3d at 960 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275–76 (11th Cir. 2002)).

As for the second prong, the Sixth Circuit has described its review of district courts' class certification decisions as "narrow," *Davis v. Cintas Corp.*, 717 F.3d 476, 484 (6th Cir. 2013), and "very limited," *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004). The Sixth Circuit will reverse a class certification decision "only if [the petitioner] makes a strong showing that the district court's decision amounted to a clear abuse of discretion." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). This requires a "definite and firm conviction" on the part of the appellate court that the district court "committed a clear error of judgment." *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012)).

Here, plaintiffs argue that there is a "high likelihood" that the Sixth Circuit will grant their petition and that they will prevail in their appeal [Doc. 227 pp. 4–5]. First,

7

plaintiffs assert that denial of class certification could effectively end their case, as a trial for the six named plaintiffs alone would cost much more than the damages they are likely to recover in light of the awards in similar train derailment cases. Plaintiffs cite to *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, for the proposition that interlocutory review is often warranted when "the value of each plaintiff's claim is outweighed by the costs of stand-alone litigation." 259 F.3d 154, 164 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23 advisory committee's note). Second, plaintiffs argue that the Court's order raises a novel and unsettled question of law—namely, a "judicially created 'Catch-22'" in which the requisite demonstration of ascertainability shows that joinder is, in fact, practicable [Doc. 227 p. 5 (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 298 F.R.D. 1, 5 (D.D.C. 2002))]. Third, plaintiffs argue that, while their likelihood of success on the merits takes a lesser role given the novel issue of law involved, Magistrate Judge Shirley's R&R provided a comprehensive and correct analysis that the Court should have adopted. Finally, plaintiffs note that the Court is unlikely to revisit its class certification decision.

Defendant CSX responds that plaintiffs' likelihood of success on the merits is "exceedingly small" given "the infrequency [with] which the Sixth Circuit grants such Rule 23(f) petitions and the Court's well-reasoned underlying opinion" [Doc. 233 pp. 3–4].[3] CSX notes that the Court relied heavily on the Sixth Circuit's factually similar decision in *Turnage v. Norfolk Southern Corp.* in denying class certification. 307 F. App'x 918, 923

---

[3] Defendant UTC did not address the Rule 23(f) issue in detail, but rather incorporated defendant CSX's arguments into its own response [Doc. 231].

(6th Cir. 2009) (affirming denial of class certification in a train derailment and evacuation case where plaintiffs failed to show the proposed class was so numerous as to make joinder impracticable). CSX argues that this Court conducted a rigorous analysis before denying certification and that the Sixth Circuit is unlikely to find any abuse of discretion.

After reviewing the arguments advanced and authorities cited by both parties, the Court first concludes that the Sixth Circuit is unlikely to grant plaintiffs' petition for permission to appeal. The Court finds that only one of the four factors identified as relevant in *VHS of Michigan*—that the district court is unlikely to reconsider its class certification decision—favors plaintiffs. Otherwise, plaintiffs have failed to show that this decision will sound the "death knell" of their case because it will become too costly to litigate. *Polyurethane Foam Litig.*, 2014 WL 12591692, at *2. The Court in *Delta Air Lines* made clear that "discussion of this factor must go beyond a general assertion"; indeed, the petitioner must demonstrate precisely how the expected costs of continued litigation will dwarf the expected recovery at trial. 310 F.3d at 960; *see also Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (cautioning that, in weighing this factor, courts "must be wary lest the mind hear a bell that is not tolling"). Here, plaintiffs provide only the conclusory assertion that the costs of going to trial will exceed the damages awarded in other cases, such as *Freeman v. Norfolk Southern Corp.*, No. 3:03-cv-341, 2007 WL 2156753 (E.D. Tenn. July 25, 2007). This is insufficient.

Furthermore, while a novel or unsettled question of law will support interlocutory review, no such question is apparent in the Court's order denying certification. Instead,

the Sixth Circuit in *Turnage* thoroughly considered the same deficiency in a Rule 23(a)(1) numerosity showing—in a case also arising out of a trail derailment, chemical spill, and resulting local evacuation—and came to the same conclusion as this Court. 307 F. App'x at 922–23. Because *Turnage* represents the controlling law in this circuit, the Court's holding that plaintiffs failed to show that their proposed class was so numerous as to make joinder impracticable is neither "novel [n]or unsettled." *Delta Air Lines*, 310 F.3d at 960. And, while "case-specific matters of fact" and concerns of "judicial discretion" may distinguish this case from *Turnage* in limited respects, this is true of almost any class certification decision and does not furnish a basis for interlocutory review. *Id.* (quoting *Prado-Steiman*, 221 F.3d at 1275–76).

Largely for the same reasons, the Court also finds that plaintiffs would be unlikely to succeed on the merits—another factor critical to the Sixth Circuit's decision whether to permit an interlocutory appeal. *See Delta Air Lines*, 310 F.3d at 960 (noting that "[t]his factor may be of greater or lesser significance, depending on other factors in the case, but it is always relevant"). The Court will not attempt here to reiterate the thorough analysis of the Rule 23(a)(1) numerosity issue it provided in its September 26 order denying class certification [Doc. 220]. The Court merely notes that, as in *Turnage*, plaintiffs "had ample opportunity during the course of this protracted litigation to supply concrete evidence of numerosity if there were any such evidence to be had," yet failed to do so. 307 F. App'x at 922–23. Thus, the first, second, and third factors discussed in *VHS of Michigan* all indicate that the Sixth Circuit is unlikely to grant plaintiffs' petition.

And even if the Sixth Circuit were to entertain an interlocutory appeal under Rule 23(f), plaintiffs have also failed to carry the second half of their burden on the likelihood-of-success factor—i.e., that "the Sixth Circuit will reverse . . . this Court's class certification decision[]." *Polyurethane Foam Litig.*, 2014 WL 12591692, at *1. Plaintiffs have offered no new substantive argument to lead the Court to reconsider the conclusions it reached in its September 26 order. In other words, plaintiffs have failed to make the "strong showing" of "a clear abuse of discretion" that the Sixth Circuit requires before it will overturn a district court's considered judgment as to an issue of class certification. *Whirlpool Corp. Prods. Liab. Litig.*, 722 F.3d at 850. Therefore, the Court finds that, as a whole, plaintiffs have not demonstrated a likelihood of success on the merits.

### 2. The Balance of Harms

The Court next turns to the second and third factors: whether plaintiffs will suffer irreparable harm absent a stay, and whether a stay would cause substantial harm to defendants or others. In evaluating and balancing the injuries likely to result, courts "generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154. The Supreme Court has made clear that "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). The harm must also be "both certain and

11

immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154. Further, the degree of harm and the likelihood of success on the merits the movant must show are inversely proportional to each other—though even if irreparable harm is clear, the movant must still prove more than a mere possibility of success. *Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Here, plaintiffs assert that they will incur great expense and quite possibly waste significant resources absent a stay. As indicated above, plaintiffs believe that the values of their individual claims are low relative to their likely recoveries at trial, such that continued litigation without class certification may be economically infeasible. Plaintiffs argue that, by contrast, defendants would suffer no prejudice from a stay, especially because the Rule 23(f) advisory committee's note "specifically cautions the appellate courts to act expeditiously on such petitions for permission to appeal." *Whitlock v. FSL Mgmt., LLC*, No. 3:10-cv-562, 2012 WL 6675124, at *3 (W.D. Ky. Dec. 21, 2012) (quoting *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 199 (3d Cir. 2008)).

Defendant CSX responds that plaintiffs' claim of irreparable injury boils down to an argument that having to litigate their individual claims without class certification will not be financially beneficial. CSX argues that, if this were sufficient for irreparable injury, Rule 23(f) motions to stay would be routinely granted—but they are not. CSX thus asserts that plaintiffs' showing fails the requirement that "the injury complained of must be of such imminence that there is a clear and present need for equitable relief." *Metro. Life Ins. v. Vanlue*, No. 5:11-cv-84, 2011 WL 2010180, at *3 (W.D. Ky. May 23, 2011) (quoting

*Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001)). Instead, plaintiffs have alleged only "run-of-the-mill litigation expenses to continue to prosecute the case that they have chosen to bring" [Doc. 233 p. 5 (emphasis omitted)]. On the other hand, CSX asserts that given the length of time this case has been pending and the efforts it has undertaken to prepare for trial, further delay would harm CSX.

The Court agrees with defendants that plaintiffs have failed to show irreparable harm. In essence, plaintiffs have merely alleged—in a largely conclusory fashion—that they will be economically disadvantaged if they are forced to litigate this case absent class certification. But "[a] showing of irreparable harm requires more than a reference to litigation costs associated with continued district court proceedings, or to settlement pressures. The same factors are present in most (if not all) cases" concerning class certification." *Polyurethane Foam Litig.*, 2014 WL 12591692, at *4. Moreover, even if plaintiffs had set out their likely financial losses in greater detail, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson*, 415 U.S. at 90. Plaintiffs have not shown that they would suffer *irreparable* injury—distinct in character and extent from the usual class certification dispute—absent a stay. Thus, the second factor does not favor plaintiffs' position.

As for the third factor, the Court notes that the harms defendant CSX claims it will suffer if a stay enters are the same basic litigation expenses the Court has found insufficient with regard to plaintiffs. On the other hand, plaintiffs bear the burden of proving the *absence* of harm to other affected parties, *Serv. Emps. Int'l Union Local 1 v. Husted*, 696

F.3d 341, 343 (6th Cir. 2012), and there is also no threshold requirement of irreparability—mere "substantial harm" will suffice, *Leary*, 228 F.3d at 736. Further, while the Rule 23(f) commentary suggests that appellate courts should review such petitions expeditiously, it is unknown when the Sixth Circuit will actually rule on plaintiffs' petition. Thus, the costs defendants would incur as a result of a stay are difficult to ascertain. The Court ultimately finds that this factor is largely neutral, favoring neither side's position strongly.

### 3. The Public Interest

Finally, regarding the public's interest in this litigation, plaintiffs argue that a stay would best serve the public interest because proceeding to trial while plaintiffs' Rule 23(f) petition is pending "would be an inefficient use of judicial resources" [Doc. 227 p. 6]. Plaintiffs submit that a short stay of proceedings will result in no prejudice to any party and will conserve judicial and litigant resources, thus aligning with the public's interest in the efficient resolution of the important issues raised in this litigation.

Defendant CSX responds that a stay would "negatively impact judicial economy," thus contravening the public interest [Doc. 233 pp. 5–6]. CSX submits that a stay would require delaying the trial date for months to find a workable timeslot for a multi-day jury trial, possibly necessitating the rearrangement of other case settings. Furthermore, CSX asserts that a stay would inhibit the prompt resolution of important motions pending before the Court, including defendants' dispositive motions.

The Court finds that a stay would not serve the public interest. "The public has an interest in prompt resolution of the cases that will be tried in this District." *Polyurethane*

*Foam Litig.*, 2014 WL 12591692, at *4. Especially in a case that has been pending for more than two years, the public interest strongly demands as prompt and efficient a resolution of the controversy as possible. And, unlike a brief continuance of the trial date, *see infra* Section II.B, a stay pending the outcome of an appeal would not permit the Court to select a new trial date at this time, given the uncertainty as to when the Sixth Circuit will rule on plaintiffs' petition. Nor would it permit the parties to begin preparing to go to trial on a particular date. Furthermore, as CSX observes, a stay would prevent the Court from resolving important, pending matters in the interim—including defendants' summary judgment motions [Docs. 175, 177] and plaintiffs' motion to amend [Doc. 167], the issues in which do not turn on the question of class certification. A stay would thus disrupt the orderly and efficient administration of this litigation to an extent that a continuance or other remedies would not. In sum, "[t]he public's interest in prompt disposition of cases in federal court suggests proceeding as promptly as possible." *Hoop v. Andrews*, No. 1:06-cv-603, 2009 WL 2431285, at *2 (S.D. Ohio Aug. 6, 2009).

For all of these reasons, the Court finds that the balance of relevant considerations counsels against a stay of these proceedings pending a decision from the Sixth Circuit on plaintiffs' petition for permission to appeal.

### B.     Plaintiffs' Motion to Continue the Trial Date

Alternatively, plaintiffs request a six-month continuance of the trial date, currently scheduled for November 13, 2017 [Doc. 148]. Plaintiffs argue that considerations of judicial economy and party resources weigh in favor of a continuance. Plaintiffs submit

that, given the Court's denial of class certification, the Court and parties will require additional time to determine how this matter should proceed. For example, the Court and parties will have to develop a trial plan and determine the manner in which the various related cases will be tried. Further, plaintiffs observe that there are several important motions pending before the Court—including defendants' summary judgment motions and plaintiffs' motion to amend their complaint—that may greatly alter the shape of this litigation. Plaintiffs also note that, although Magistrate Judge Shirley has already held part of a hearing to address defendants' *Daubert* motions pertaining to plaintiffs' expert witnesses, the second day of that hearing has been delayed until November 1—only two weeks before trial [Doc. 222]. More than two weeks' time may be necessary for Magistrate Judge Shirley to rule on these motions and for the Court to consider any appeals by the parties of such rulings. Finally, plaintiffs submit that a continuance will permit time for the Sixth Circuit to potentially rule on plaintiffs' petition.[4]

Defendant UTC does not oppose a continuance, but suggests that rescheduling the trial for the date on which the *Hall* trial is currently set—February 26, 2018—would be more appropriate [Doc. 231]. Defendant CSX, on the other hand, opposes a continuance [Doc. 233 pp. 1–2, 6]. CSX submits that the Court set the November 13 trial date nine months ago with the input of all parties, that the parties have worked diligently to prepare for that date, and that the trial should proceed as planned. But CSX also notes that, if the

---

[4] Plaintiffs also note that the Court previously granted a six-month continuance at defendants' request, which plaintiffs opposed [Doc. 148].

16

Court does believe a continuance to be warranted, the trial in this case should be set before the trials in any of the related cases. Like UTC, CSX suggests that scheduling the trial for February 26, 2018, would minimize any disruptive effect of a continuance.

After carefully considering the parties' respective positions, the Court finds that a continuance in this matter is necessary to promote judicial economy and preserve party resources. The Court finds that additional time will be necessary to effectively develop a trial plan—for this and the related cases—and dispose of the motions pending before the Court. Most significantly, the Court is concerned that two weeks is an insufficient amount of time to resolve all pending *Daubert* issues. On the other hand, the Court does not find a continuance of six months to be necessary to address these concerns. Indeed, the Court is cognizant of the fact that this matter has been pending for over two years and that additional undue delay may prejudice defendants. The Court concludes that rescheduling the jury trial in this matter for February 26, 2018, will permit sufficient time to resolve all essential issues and dispose of all pending motions.[5]

## III. Conclusion

For the reasons discussed above, the Court hereby **GRANTS in part and DENIES in part** plaintiffs' motion for a stay pending appeal or to continue the trial date [Doc. 227]. The Court also **DENIES as moot** plaintiffs' motion to shorten the time for CSX to respond

---

[5] The Court notes that *Hall* is also scheduled for trial on this same date. The Court previously stayed *Hall* until the earlier of (1) ten days after the resolution of all liability issues in *Tipton*, or (2) December 1, 2017 [*Hall* Doc. 126]. The parties were ordered to file a joint status report with the Court on that date. Thus, the Court and parties may revisit the question whether the *Hall* trial should be continued once the ongoing status of *Hall* is determined.

to plaintiffs' motion to stay or continue [Doc. 232]. Accordingly, the Court **ORDERS** that the jury trial in this matter, previously scheduled for November 13, 2017, is **CANCELLED** and is **RESCHEDULED** for **Monday, February 26, 2018, at 9:00 a.m.** Furthermore, it is **ORDERED** that the final pretrial conference, previously scheduled for November 6, 2017, is **CANCELLED** and is **RESCHEDULED** for **Tuesday, February 20, 2018, at 2:30 p.m.** Any unexpired scheduling deadlines as of the time of the filing of plaintiffs' motion [Doc. 227] shall be applied as calculated from the new trial date and according to the same time limitations set forth in the Court's original Scheduling Order [Doc. 85]. No further continuances shall be granted absent extraordinary circumstances.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE