IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| **CHARLES TIPTON, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:15-CV-311-TAV-CCS |
| | ) |
| **CSX TRANSPORTATION, INC., et al.,** | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT UNION TANK CAR COMPANY'S
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Union Tank Car Company ("UTC") files a renewed motion for judgment as a matter of law limited to Plaintiffs' nuisance claim against it. Plaintiffs failed to present any evidence establishing that UTC maintained the fire or had any part in the decision to allow the burning tank car to continue burning, each required elements of their nuisance claim. Plaintiffs' nuisance claim is also preempted by the Federal Railroad Safety Act and barred because the evidence established UTC did not extend the tank car's useful life. UTC is also entitled to judgment because Plaintiffs have not presented any proof of severe mental injury, which is required to support their claims for emotional distress. Consequently, UTC is entitled to judgment as a matter of law or judgment notwithstanding the verdict on Plaintiffs' nuisance claim.[1]

---

[1] UTC incorporates by reference its two previous motions for directed verdict, [Dkt. 388 & 389], which the Court took under advisement.

# LAW AND ARGUMENT

The same standard governs resolution of a motion for directed verdict and a motion for judgment notwithstanding the verdict ("JNOV"): the district court determines whether Plaintiffs presented sufficient evidence to raise a material issue of fact for the jury. *Cansler v. Grove Mfg. Co.*, 826 F.2d 1507, 1510 (6th Cir. 1987). This standard presents a question of law for the district court. *Id.*

In a diversity case, like this one, the district court applies the state substantive law governing directed verdicts because UTC's motion challenges the sufficiency of the evidence supporting the jury's nuisance verdict. *Id.* In Tennessee, a motion for JNOV is the state-law equivalent of a federal motion for judgment as a matter of law. Tenn. R. Civ. P. 50.02; *Mairose v. Federal Exp. Corp.*, 86 S.W.3d 502, 510-11 (Tenn. Ct. App. 2001). To resolve the motion, district courts "take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence." *Cansler*, 826 F.2d at 1510 (quoting *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)). JNOV is appropriate when "a reasonable mind could draw but one conclusion." *Id.*

**A.     Plaintiffs failed to present any evidence that UTC maintained the fire or took part in the decision to let the fire burn; instead, the evidence established that UTC did not find out about the fire until it was half burned-out and took no part in the decision to let the tank car burn.**

A federal court in a diversity action under 28 U.S.C. § 1332 applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Under Tennessee law, Plaintiffs' nuisance cause of action required proof by a preponderance of the evidence that UTC maintained a wrongful condition for an unreasonable period of time. [Jury Charge, dated March 6, 2018, p.22].

2

The evidence adduced at trial established that the wrongful condition was the fire. The tank car itself was not the wrongful condition, because the jury found UTC did not violate any applicable statute or regulation. [Special Verdict Form, Dkt. 410, Question 1; *see also* Charge to the Jury, dated March 6, 2018, p.30]. Further, the tank car itself did not cause a material and substantial injury to Plaintiffs. [Charge to Jury, dated March 6, 2018, p.22 (explaining one element of nuisance is that the wrongful condition caused a material and substantial injury)]. And CSX owned the track upon which the derailment occurred, and operated the train that contained the tank car. [Doc. 364, p.13, stipulations "D" & "E"]. Since the fire was the wrongful condition, Plaintiffs were required to prove, by a preponderance of the evidence, that UTC maintained the fire for an unreasonable period of time.

There was no evidence adduced at trial to suggest that UTC was ever in control of the accident scene or in a position to determine whether the fire should be extinguished or allowed to burn itself out. [*Id.* (stipulating that CSX controlled the train and tank car)]. To the contrary, the testimony of William Constantino established that UTC learned that a UTC tank car was involved in the derailment over ten hours after the derailment and ensuing fire. [Transcript for Jury Trial, Day 5, March 5, 2018]. Mr. Constantino further testified that UTC was not part of the emergency response at the scene. [*Id.*]. Instead, **emergency responders** determined that the fire should be allowed to burn itself out in order to consume the contents of the derailed tank car. [Defense Exhibit 140, the FRA Summary Report, p.7]. UTC took no part in that decision. Plaintiffs presented no evidence to contradict these facts. Accordingly, there was no evidence to support the jury's finding that UTC allowed the fire to continue to burn as opposed to having it extinguished; put another way, there is no evidence that UTC maintained a nuisance. UTC is entitled to directed verdict or JNOV on Plaintiffs' nuisance claim.

3

**B.  The jury's determination that UTC was not negligent establishes that Plaintiffs' nuisance claim is preempted and barred by the statute of repose.**

The Court instructed the jury that, in order to find UTC liable for negligence and/or nuisance, Plaintiffs were required to prove: (1) that UTC "breached an ongoing duty of inspection, maintenance, or repair it held under applicable federal rules or regulations;" and/or (2) during UTC's 2013 qualification of the tank car, UTC "substantially rebuilt or reconditioned the tank car so as to extend its useful life." [Charge to the Jury, dated March 6, 2018, p.30]. The Court further instructed the jury: "If you do not find that Plaintiffs have proven at least one of these two conditions by a preponderance of the evidence, then you must return a verdict for [UTC]." [*Id.*].

The jury properly found that UTC was not negligent. [Special Verdict Form, Dkt. 410, Question 1]. Consequently, the jury found that UTC did not breach any ongoing inspection, maintenance, or repair duties. Consequently, the jury's nuisance verdict must have determined that UTC substantially rebuilt or reconditioned the tank car such that its useful life was extended. Such a finding is not supported by any evidence.

**1.  The Federal Railroad Safety Act preempts Plaintiffs' nuisance claim.**

The Federal Railroad Safety Act contains a comprehensive preemption provision, which provides that all "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform . . . ." 49 U.S.C. § 20106(a)(1). With uniformity in mind, states may only:

> adopt or continue in force an additional or more stringent law, regulation, or order . . . if [it] (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (c) does not unreasonably burden interstate commerce.

*Id.* at § 20106(a)(2); *see also Smith v. CSX Transp., Inc.*, No. 3:13-cv-2649, 2014 WL 3732622, at *2 (N.D. Ohio July 5, 2014) (recognizing that the FRSA "preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to

4

railroad safety . . .'") (quoting § 20106(a)(2)). The Court applied this standard to this case in the final charge to the jury: the jury could find UTC liable if Plaintiffs proved by a preponderance of the evidence that UTC breached an ongoing duty of inspection, maintenance, or repair it held under applicable federal rules or regulations. [Charge to the Jury, dated March 6, 2018, p.30].

Here, in returning a verdict of no liability on Plaintiffs' negligence claim, the jury found that UTC did not violate any applicable federal rule or regulation. Consequently, the Federal Railroad Safety Act preempts Plaintiffs' nuisance claim. 49 U.S.C. § 20106(a)(2); *Smith*, 2014 WL 3732622, at *2.

### 2. The undisputed evidence establishes the 2013 qualification did not extend the tank car's useful life.

The Tennessee statute of repose bars Plaintiffs' nuisance claim unless Plaintiffs establish by a preponderance of the evidence that UTC's 2013 qualification of the tank car so substantially rebuilt or reconditioned the tank car such that its useful life was extended. [Charge to the Jury, dated March 6, 2018, p.30]. Here, the evidence leads a reasonable mind to only one conclusion: that the 2013 qualification did not do so.

The evidence adduced at trial establishes that UTC did not so substantially recondition or rebuild the tank car such that its useful life was extended. Plaintiffs' bearing expert, James Whelan, admitted that the 2013 qualification did not extend the useful life of the incident wheel bearing. [Transcript 2 of 2 for Jury Trial, Day 4 (James Whelan), March 1, 2018, 16:19-24]. This admission was the only evidence Plaintiffs presented on this point. Nor could Plaintiffs present any evidence regarding extension of the tank car's useful life because, as Mr. Constantino and Joe Perez testified, the useful life of the tank car is set by federal law. (Transcript of Deposition of Joseph Perez, 123:25-124:3 & 124:6-8 ("**Q:** What -- what does the -- the 50 years mean? Does it mean that, no matter what, you've got to stop using a tank car at 50 years? Or does it mean it's expected to wear

5

out within 50 years? **A.** You asked about the extended service, 50-year life. That's the end. That's the death date of a tank car, is October 1st, 2024."); Transcript for Jury Trial, Day 5, March 5, 2018 (testimony of William Constantino)]. Nothing UTC could have done to the tank car could possibly extend the federally-limited useful life. Consequently, the only conclusion that can be drawn from this evidence is that Plaintiffs' nuisance claim is barred by the Tennessee statute of repose. UTC is entitled to JNOV on Plaintiffs' nuisance claim.

C. **The record is devoid of any evidence to substantiate the jury's award of damages for mental or emotional injury.**

In the alternative, UTC is entitled to judgment as a matter of law on Plaintiff's claims for mental or emotional injury. The jury awarded a total of $5,000 in damages for mental or emotional injury as follows: Billy Tipton - $2,000; Kelli Johnson - $1,000; Aaron Johnson - $1,000; James Christie - $500; and Doreene Christie - $500. [Dkt. 410, p.3]. Plaintiffs are not entitled to such an award because they failed to establish they suffered from a "serious mental injury." In addition, they may not recover emotional distress damages arising solely from property damages.

1. **Plaintiffs have failed to establish serious mental injury.**

Tennessee law has long recognized that **all** claims for emotional distress require evidence of a serious or severe mental injury. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 270 (Tenn. 2015) ("[A]ctions for "negligent infliction of emotional distress (including all three "subspecies" of negligent infliction: 'stand-alone,' 'parasitic,' and 'bystander') require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct."); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 210 (Tenn. 2012) ("[A] serious or severe mental injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case"); *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 134 (Tenn. 2001) (holding that although expert

6

proof is not necessary in "parasitic" emotional distress cases, standalone emotional distress cases do, in fact, require expert proof of a severe or serious mental injury); *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) ("[I]n order to guard against trivial or fraudulent actions, the law ought to provide a recovery only for "serious" or "severe" emotional injury.").

In *Rogers*, the Tennessee Supreme Court listed the factors to consider as to whether emotional distress rose to the level of "serious or severe" mental injury:

> (1) evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
>
> (2) evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
>
> (3) evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
>
> (4) evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
>
> (5) other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
>
> (6) in certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Rogers*, 367 S.W.3d at 209-10.

In *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015), the plaintiff/wife was not given a RhoGAM injection during her pregnancy, which resulted in an irreversible blood condition known as "Rh-sensitization" that causes the host to develop certain antibodies that may cross the placenta and attack the red blood cells of an Rh-positive fetus. *Id.* at 239. This exposes the fetus to several risks, some of which can be fatal. *Id.* The plaintiffs, who were devoutly Catholic and morally opposed to "traditional" means of birth control, were left "in

7

a state of emotional distress" because they feared that the wife's Rh-sensitization would result in complications with future pregnancies. *Id.*

The Court first examined whether the testimony established "serious emotional injury." Mrs. Rye testified that she was "scared," "so upset," remained "very concerned," and thought about the risks "every day." *Id.* at 271. But "she had not sought emotional or psychiatric counseling or mental health treatment from a psychiatrist, a psychologist, a counselor, or anyone else as a result of her concerns;" nor did those concerns cause her to miss work or business activities, and "she continued her parenting responsibilities without disruption." *Id.* Relying on *Rogers*, the Court held that Mrs. Rye's evidence failed to meet the legal standards for establishing a parasitic emotional distress claim because she provide no evidence of serious emotional injury, since:

> She has neither suffered physiological or psychological symptoms, nor sought medical or professional treatment, nor incurred any significant impairment in her daily functioning resulting from her Rh-sensitization. In fact, she testified that she has not sought any counseling or treatment of any sort and that her daily work and parenting routines have not been disrupted.

*Id*. at 272.

This Court addressed the requirement of "serious or severe emotional injury" in *Capps v. Cremation Options, Inc*., No. 3:12-CV-545-TAV-HBG, 2016 WL 123425 (E.D. Tenn. January 11, 2016). At the outset this Court, citing *Rogers*, noted that, whether the action is for intentional or negligent infliction of emotional distress, plaintiff must establish a serious mental injury resulting from the defendant's conduct. *Id*. at *4 (internal quotations omitted). The Court then reviewed Plaintiffs' evidence designated in support of their emotional distress: they "immediately experienced profound and severe pain, anguish, grief, sorrow, and outrage . . . it is 'rare' for them to not have 'some moment of suffering' each day." *Id.* The Court also noted one plaintiff continued to "weep uncontrollably." *Id.*

8

This Court rejected plaintiffs' claims, finding that such damages are insufficient to establish serious or severe mental injury as a matter of law because "plaintiffs have not demonstrated that they have suffered any significant impairment in their daily lives resulting from the alleged outrageous conduct of defendant." *Id.* at *6; *see also Rogers,* 367 S.W.3d at 210-211 (finding that plaintiff did not suffer serious mental injury where she was "very, very emotional, very tearful"); *Nesbitt v. Wilkins Tepton, P.A.*, No. 3:11-cv-0574, 2012 U.S. Dist. LEXIS 115407 at *30-32, 2012 WL 3561795 (M.D. Tenn. Aug 16, 2012) (finding no serious mental injury for a plaintiff who suffered extreme stress during pregnancy, cried, and suffered from anxiety; for a plaintiff who became angry at family members, was not able to function effectively as a friend, took medication, and suffered nightmares; nor for a plaintiff who zoned out at work and would get upset and tearful when talking about work); *Giles v. Hometown Folks, LLC,* 61 F.Supp.3d 749, 759 (E.D. Tenn. 2014) (holding that plaintiff did not meet this standard, despite being "upset and crying" after the incident at issue, and meeting with a counselor multiple times).

In this case, Plaintiffs testified that the derailment caused them "worry" and "concern." Some expressed that hearing trains or crossing the railroad tracks near where the derailment occurred caused them worry. To varying degrees, Plaintiffs alleged that the derailment caused them to lose sleep in the immediate aftermath of the train derailment. Some testified that their sleep was affected for a period into the future.

None of the Plaintiffs suffered physiological or psychological symptoms as a result of the derailment. They have never been diagnosed with any psychological condition such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia. No Plaintiff sought medical or professional treatment for his or her "fear, anxiety or mental anguish." They were never prescribed medications for their complaints.

Plaintiffs have failed to demonstrate that they have suffered any significant impairment in their daily lives. No Plaintiff testified that the alleged mental injury caused them to miss work or alter their daily routine in any way. The evidence of emotional distress provided in this case is certainly no better than the evidence rejected by the Tennessee Supreme Court in *Rye* and by this Court in *Capps.*

Plaintiffs attempt to use Dr. George Rodgers—a toxicologist—to overcome these deficiencies. Dr. Rodgers has no background in psychology or psychiatry. He never examined or reviewed medical records of the specific Plaintiffs in this case and could not offer any opinions of any of the Plaintiffs' mental state. No such opinion was contained in Dr. Rogers' report and he did not offer such an opinion at any point prior to the trial.[2] Dr. Rodgers' generalizations that persons in the evacuation zone could "reasonably" expect to experience emotional distress does not constitute a diagnosis of any mental health disease. Nor could he provide such a diagnosis because he has never examined any of the Plaintiffs.

The jury had no basis for finding Plaintiffs suffered "serious or severe mental injury." UTC is entitled to judgment as a matter of law on Plaintiffs' claims of "fear, anxiety and mental anguish."

**2.   Alternatively, if Plaintiffs' claim is standalone, UTC is entitled to judgment as a matter of law because Plaintiffs have not presented expert proof of emotional injury.**

Beginning with *Camper v. Minor*, the Tennessee Supreme Court acknowledged that allowing plaintiffs to pursue emotional distress claims where no corresponding physical injury occurred–i.e. standalone claims–could potentially open the floodgates to vexatious litigation.

---

[2] UTC maintains that because Dr. Rodgers was not qualified to testify regarding mental health issues and was never disclosed as an expert in these areas prior to trial, his testimony should have been excluded.

10

*Camper*, 915 S.W.2d at 442. With that concern in mind, the court imposed two requirements on standalone claims: (1) the plaintiff's emotional injuries must be "serious or severe;" and (2) "the claimed injury or impairment must be supported by expert medical or scientific proof." *Id.* at 446 (citing *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 766-67 (1974)).

During the Final Pretrial Conference, Plaintiffs announced to the Court and UTC that their emotional distress claims were "standalone" claims. Not a single expert testified as to the severity or seriousness of any Plaintiff's purported emotional injury. On the contrary, the ***only*** evidence concerning emotional distress came from Plaintiffs themselves. This is insufficient. *Camper*, 915 S.W.2d at 442. Because their testimony is legally insufficient to establish the elements of their standalone claims, judgment as a matter of law is appropriate.

### 3. "Fear, anxiety and mental anguish" damages are not recoverable in connection with injury to property.

Plaintiffs may not recover emotional distress for property damage claims. *Lane v. Estate of Leggett*, 2017 WL 1176982 No. M2016-00448-COA-R3-CV (Tenn. Ct. App. March 29, 2017) In *Lane*, plaintiff sought "to recover for emotional injuries allegedly sustained when the defendant's automobile drove into plaintiff's business, struck a gas meter, and started a fire, which destroyed the business." *Id.* at *1. The Court affirmed the trial court's grant of summary judgment dismissing the emotional distress claim, holding plaintiff cannot recover emotional distress arising from injury to property:

> The tort has been asserted in various factual scenarios; however, no case has explicitly held that negligent infliction of emotional distress is a cognizable claim when a plaintiff's emotional injuries arise solely out of property damage. We find instructive the statement of the Tennessee Supreme Court in *Whaley v. Perkins*:
>
>> Subject to some exceptions, generally, under ordinary circumstances, there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his or her property. Where, however, the act occasioning the injury to the property is inspired by fraud, malice, or like motives, mental suffering is a proper element of damage.

11

197 S.W.3d 665, 670 (Tenn. 2006) (quoting 25 C.J.S. Damages § 99 (2002)).

*Lane*, 2017 WL 1176982, at *4.

Plaintiffs' claim fails as the purported emotional distress arises from alleged damages to property.[3] [Doc. 253, ¶95]. The Tennessee Pattern Jury Instruction, T.P.I. – Civil 9.14 provides the general measure of damages for a temporary nuisance, as Plaintiffs allege here, is the decrease in rental value:

> A temporary nuisance is one that can be measured by money, labor or both. The general measure of damages for a temporary nuisance is the decrease in rental value of the plaintiff's property while the nuisance exists. Special damages, apart from property damages, may be recovered by loss of profit, personal discomfort, inconvenience, personal injury and emotional distress.

Plaintiffs explicitly disclaimed personal injury. In their request for damages for nuisance, they requested the jury award damages for "real property damage, personal property damage, loss of income, out-of-pocket expenses, loss of use and enjoyment of property, aggravation and inconvenience, and fear, anxiety and mental anguish." *See* Amended Master Consolidated Class Action Complaint, ¶68. [Doc 249]. Because Plaintiffs' nuisance claim is solely for property damage, UTC is entitled to directed verdict on their parasitic claim for "anxiety, fear and mental anguish" arising from these purported property damages. *Lane*, 2017 WL 1176982, at *4; *Whaley*, 197 S.W.3d at 670.

### III. CONCLUSION

UTC is entitled to directed verdict or JNOV on Plaintiffs' nuisance claim because the evidence adduced at trial supports but one conclusion: UTC is not liable in nuisance. The evidence established that UTC did not maintain the nuisance (the fire), nor did UTC take any part in the

---

[3] The jury found for UTC on the issue of negligence. To the extent the Court finds the award of damages for mental or emotional injury is based on Plaintiffs' negligence claims, UTC relies specifically on its arguments set forth in its prior motion for directed verdict [Doc 388].

12

decision to let the fire burn itself out. Similarly, the only evidence regarding whether the 2013 qualification extended the tank car's useful life came from Plaintiffs' expert, James Whelan, who admitted the 2013 qualification did not do so. Consequently, UTC is entitled to directed verdict or JNOV on Plaintiffs' nuisance claims.

Alternatively, UTC is entitled to directed verdict or JNOV because Plaintiffs have not presented any proof of severe mental injury, a requirement for their claims for emotional distress. This Court should enter directed verdict of JNOV in favor of UTC on Plaintiffs' nuisance claim.

Respectfully submitted,

/s/ Jacob V. Bradley_____
Joshua B. Fleming, *admitted pro hac vice*
Jacob V. Bradley, *admitted pro hac vice*
Quarles & Brady LLP
135 North Pennsylvania Street
2400 BMO Building
Indianapolis, IN 46204
Office: (317) 399-2814
Fax: (317) 957-5014
E-Mail: josh.fleming@quarles.com
E-Mail: jacob.bradley@quarles.com

Michael J. King, TBPR# 015523
Paine Bickers, LLP
900 S. Gay St., Ste. 2200
Knoxville, TN 37902
Office: (865) 525-0880
Fax: (865) 521-7441
E-Mail: mjk@painebickers.com

Mark A. Kircher, *admitted pro hac vice*
Quarles & Brady LLP
411 East Wisconsin Avenue, Ste. 2350
Milwaukee, WI 53202-4426
Office: (414) 277-5347
Fax: (414) 271-3552
E-Mail: mark@quarles.com

*Counsel for Union Tank Car Company*

**CERTIFICATE OF SERVICE**

       I hereby certify that on April 10, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                                         /s/ Jacob V. Bradley
                                         Jacob V. Bradley, *admitted pro hac vice*

QB\51375195.1