IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| CHARLES TIPTON, et al., | ) |
| | ) |
|  Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:15-CV-311-TAV-CCS |
| | ) |
| CSX TRANSPORTATION, INC., et al., | ) |
| | ) |
|  Defendants. | ) |

**DEFENDANT UNION TANK CAR COMPANY'S
SUPPLEMETNAL BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT AS A MATTER OF LAW**

## I.    INTRODUCTION

Union Tank Car Company ("UTC") is entitled to a judgment as a matter of law on Plaintiffs' nuisance claim. The jury determined that UTC did not violate any applicable regulation or statute and thus did not breach any ongoing duty UTC may have had for inspection, maintenance, or repair of the tank car. Accordingly, Plaintiffs' only possible nuisance "theory" against UTC was that it maintained a wrongful condition (the tank car fire) for some period of time.[1] The proof presented at trial unequivocally established that UTC did not maintain any wrongful condition and that CSX alone is liable under Plaintiffs' nuisance claim.

Additionally Plaintiffs' nuisance claim against UTC is preempted by the Federal Railroad Safety Act ("FRSA"). The Court's pretrial rulings on UTC's FRSA preemption arguments held

---

[1] Plaintiffs' Amended Complaint, paragraph 38, contains the specific allegations regarding the maintenance of the wrongful condition. [Doc.249, p.9]. Plaintiffs asserted these allegations solely against CSX, which claim CSX "did not control, mitigate or remediate the release or extinguish the fire…" [*Id.*]. Plaintiffs further claimed CSX "allowed the UTLX rail car to burn for approximately 20 hours…" [*Id.*]. Plaintiffs did not make any of these allegations against UTC.

that only claims alleging UTC violated any applicable Federal statute or regulation survive preemption. At trial, the jury determined that UTC did not violate any applicable Federal regulation or statute and, thus, did not breach any ongoing duty UTC may have had for inspection, maintenance, or repair of the Tank Car. As such, Plaintiffs' nuisance claim is preempted by FRSA.

UTC is also entitled to judgment because Plaintiffs have not presented any proof of severe mental injury, which is required to support their claim for emotional distress. Consequently, UTC is entitled to judgment as a matter of law or judgment notwithstanding the verdict on Plaintiffs' nuisance claim.[2]

## II. LAW AND ARGUMENT

**A.  The evidence introduced at trial establishes UTC did not maintain a wrongful condition; consequently, CSX alone is liable under Plaintiffs' nuisance theory.**

In order to prove their nuisance claim against UTC, Plaintiffs were required to establish by a preponderance of the evidence that UTC maintained a wrongful condition for an unreasonable period of time. [Charge to the Jury, dated March 6, 2018, p.22]. The only "wrongful condition" plaintiffs established at trial was the fire. The jury received absolutely no evidence that UTC maintained any wrongful condition. Instead, the jury received considerable evidence that CSX maintained the fire. Based on the evidence the jury received, there is no basis for any finding that UTC has any liability under Plaintiffs' nuisance claim; instead, CSX alone is liable under Plaintiffs' nuisance theory.

It is critical to note that the assertions in Plaintiffs' complaint on this issue allege only that CSX was liable under a nuisance theory for its actions before and immediately after the train derailment. Plaintiffs alleged CSX was liable because its employees failed to properly inspect the

---

[2] UTC incorporates by reference its two previous motions for directed verdict, [Doc.388 & 389], and its Renewed Motion For Judgment As A Matter of Law, [Doc.414], which the Court took under advisement.

bearings on the date of the incident. [Doc.249, p.8]. Plaintiffs also alleged CSX was liable by failing to control, mitigate, or remediate the release of acrylonitrile because it allowed the tank car to burn for over 20 hours. [*Id.*, p.9]. The evidence introduced at trial corroborating these allegations and establishing CSX's sole liability for nuisance is overwhelming:

(1) CSX inspected the tank car prior to the derailment. Plaintiffs' expert James Whelan testified the CSX inspection was not performed properly. [Doc.417-1, p.5]. Plaintiffs did not introduce any evidence that UTC was involved in this inspection.

(2) The parties stipulated CSX owned the track upon which the derailment occurred. [Doc.364, p.13, stipulation "E."].

(3) CSX was solely operating the train that included the tank car at the time of the derailment. [*Id.*, stipulation "F."].

(4) CSX maintained sole control over the train and tank car for some period of time after the derailment until emergency responders took control of the scene and determined that the fire should be allowed to burn itself out in order to consume the contents of the derailed tank car. [Defense Exhibit 140, the FRA Summary Report, p.7].

The undisputed evidence established that the last time UTC was in possession of, or had any control over, the tank car was during the 2013 qualification. [See, e.g., Plaintiffs' Tr.Ex.48 (UTC's lease for the tank car, providing UTC had no control over the tank car once UTC released it to the lessee, which it did following the 2013 qualification)]. There is no evidence that UTC was ever in control of the train. Nor was UTC in control of the specific tank car at any point after 2013. There was no evidence presented to even suggest UTC was ever in control of the accident scene or in a position to determine whether the fire should be extinguished or allowed to burn itself out.

In fact, UTC was not even aware that its tank car was involved in the derailment until the fire had been burning for approximately half of a day. William Constantino established that UTC learned that a UTC tank car was involved in the derailment through media reports some time during the morning of July 2, 2015. [Transcript for Jury Trial, Day 5, March 5, 2018, 86:20-87:1]. Joe Perez testified that UTC first learned a derailment occurred "as early as 7:55 AM" on July 2nd,

3

which was nearly eight hours after the derailment occurred. [Dep. of Joseph Perez, 190:10-12]. However, by 8:50 AM, the identity of the manufacturer of the tank car was still unknown. [*Id*., 191:18-192:1]. It was not until later in the day on July 2, 2015 that UTC learned that its car was involved in the derailment. [*Id*., 196:4-10].

The **only proof** regarding the maintenance of the nuisance-creating instrumentality introduced at trial incriminates CSX. CSX alone is liable under Plaintiff's nuisance theory. UTC is entitled to directed verdict or judgment notwithstanding the verdict on Plaintiffs' nuisance claim.

**B.      The jury's determination that UTC was not negligent establishes that Plaintiffs' nuisance claim is preempted.**

The FRSA contains a comprehensive preemption provision, which provides that all "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform . . . ." 49 U.S.C. § 20106(a)(1). With uniformity in mind, states may only:

> adopt or continue in force an additional or more stringent law, regulation, or order . . . if [it] (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (c) does not unreasonably burden interstate commerce.

*Id.* at § 20106(a)(2); *see also Smith v. CSX Transp., Inc.*, No. 3:13-cv-2649, 2014 WL 3732622, at *2 (N.D. Ohio July 5, 2014) (recognizing that the FRSA "preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to railroad safety . . .'") (quoting 49 U.S.C. § 20106(a)(2)).

In ruling on UTC's pretrial dispositive motions, this Court held Plaintiffs' claims are preempted by the FRSA unless they allege a violation of applicable Federal statutes or regulations. [See, e.g., Doc.241, p.41]. The Court instructed the jury consistent with this ruling. [Charge to the Jury, dated March 6, 2018, p.30]. By returning a verdict of no liability on Plaintiffs' negligence claim, the jury found that UTC did not violate any applicable Federal rule or regulation.

4

Consequently, the FRSA preempts Plaintiffs' nuisance claim. 49 U.S.C. § 20106(a)(2); *Smith*, 2014 WL 3732622, at *2.

Other courts that have addressed FRSA preemption in cases where multiple claims are based upon the same set of facts—like Plaintiffs' claims here—have held the FRSA preempts all of plaintiffs' claims. *See, e.g., Mehl v. Canadian Pacific Railway*, 417 F.Supp.2d 1104, 1119 (D.N.D. 2006). In *Mehl*, plaintiffs sued the railroad for alleged injuries that occurred after a derailment and release of anhydrous ammonia. *Id*. at 1106. Plaintiffs asserted that the railroad breached its duties regarding inspection, construction and maintenance, training, and operation. *Id*. at 1116-1119. The Court found all of these claims, based in negligence, were preempted. *Id.* Because plaintiffs' nuisance claims were premised on the same conduct, the Court found the public nuisance, private nuisance, and trespass claims were also preempted. *Id.* at 1119. After all, "to allow state law claims to proceed would defeat the purpose of federal preemption and lead to varying standards of care throughout the country." *Id*.;[3] *see also Rooney v. City of Philadelphia*, 623 F.Supp.2d 644, 666 (E.D.Penn. 2009) (holding the FRSA preempts all claims based upon the same facts); *Lundeen v. Canadian Pacific Railway Co.*, 507 F.Supp.2d 1006, 1012 (D.Minn. 2007) (holding the FRSA "preempts **all claims** arising from 'covered' subject matters . . . ." (emphasis added)); *Bradford v. Union Pacific R.R. Co.*, 491 F.Supp.2d 831, 839 (W.D.Ark. 2007) (same). Consequently, the FRSA preempts Plaintiffs' nuisance claim. *Id.*

---

[3] The FRSA preemption provision was amended in 2007 to allow claims for personal injury or death based upon, among other things, an alleged violation of Federal statues or regulations. 49 U.S.C. § 20106(b)(1)(A). This amendment, however, does not impact *Mehl's* holding that if the FRSA preempts one cause of action it preempts all causes of action based upon the same facts.

**C. The record is devoid of any evidence to substantiate the jury's award of damages for mental or emotional injury.**

The Court's Memorandum Opinion and Order explicitly requested supplemental briefing on UTC's arguments that CSX is solely liable for nuisance and the FRSA preempts Plaintiffs' nuisance claim. [Doc.423]. The Court held under advisement UTC's arguments regarding the award of mental or emotional injury set forth in its First Motion for Judgment as a Matter of Law, [Doc 388], and its Renewed Motion for Judgment as a Matter of Law, [Doc 414], which arguments are incorporated here. UTC takes this opportunity to address a recent decision from this Court that further bolsters these arguments.

In October 2018, this Court granted summary judgment to CSX in another case arising out of the derailment. *Toledo v. CSX Transportation, Inc*., No. 3:16-CV-475-TAV-DCP, 2018 WL 4923361 (E.D. Tenn. Oct. 10, 2018). Toledo alleged he suffered from emotional distress as a result of the train derailment. The Court began by once again noting that while such claims are categorized as "standalone," "parasitic," or "bystander," all such actions require "a showing that the plaintiff suffered **a serious mental injury** resulting from the defendant's conduct." *Id*., at \*6.

This Court held Toledo failed to present sufficient evidence of serious mental injury to satisfy the *Rogers* standard. *Id.* at \*7. The Court found Toledo's medical records, which described problems with sleep and anxiety, failed to demonstrate the injuries resulted from CSX's conduct. *Id*. The Court then considered Toledo's interrogatory responses in which "he recall[ed] experiencing respiratory problems, chest pains and general emotional disturbances." *Id.* The Court found these allegations were also insufficient to establish emotional distress:

> Temporary chest pains and breathing problems caused by the fright of evacuation do not rise to the severity or seriousness of distress required by *Rogers*, and allegations of general emotional distress, without any information on psychological or physiological side effects, medical treatment, or duration and intensity, are insufficient.

6

*Id*.

Plaintiffs' testimony here also falls well short of the "serious mental injury" required to prove emotional distress. Like Toledo, Plaintiffs described "worry" and "concern." Some described "loss of sleep" in the immediate aftermath of the derailment or for a period of time thereafter. None of the testimony regarding their emotional distress rises to the necessary level of serious mental injury to permit recovery for emotional distress. *Id.*

### III. CONCLUSION

UTC did not maintain the nuisance (the burning tank car) as it had no control over the tank car or fire and took no part in the decision to let the fire burn itself out. CSX was the only party that played any role in the events immediately leading up to the derailment as well as any post-derailment decisions on handling the fire. UTC is entitled to judgment as a matter of law.

UTC is further entitled to judgment as a matter of law because Plaintiffs' nuisance claim is preempted by the FRSA. The jury's determination that UTC did not violate any applicable federal rule or regulation preempts Plaintiffs' nuisance claim.

Finally, UTC is entitled to judgment as a matter of law on Plaintiffs' claim for emotional distress as they have failed to prove serious mental injury.

Respectfully submitted,

/s/ Jacob V. Bradley_____

Joshua B. Fleming, *admitted pro hac vice*
Jacob V. Bradley, *admitted pro hac vice*
Quarles & Brady LLP
135 North Pennsylvania Street
2400 BMO Building
Indianapolis, IN 46204
Office: (317) 399-2814
Fax: (317) 957-5014
E-Mail: josh.fleming@quarles.com
E-Mail: jacob.bradley@quarles.com

Mark A. Kircher, *admitted pro hac vice*
Quarles & Brady LLP
411 East Wisconsin Avenue, Ste. 2350
Milwaukee, WI 53202-4426
Office: (414) 277-5347
Fax: (414) 271-3552
E-Mail: mark@quarles.com

7

Michael J. King, TBPR# 015523
Paine Bickers, LLP
900 S. Gay St., Ste. 2200
Knoxville, TN 37902
Office: (865) 525-0880
Fax: (865) 521-7441
E-Mail: mjk@painebickers.com

*Counsel for Union Tank Car Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 10, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

            /s/ Jacob V. Bradley
            Jacob V. Bradley, *admitted pro hac vice*

QB\55591046.2